PALCO LININGS, INC., Plaintiff,

v.

PAVEX, INC., Brinjac, Kambic & Associates, Inc., and Brinjac–Chester Engineers, City of Harrisburg, Defendants.

Civ. A. No. 3:CV–89–1631.

United States District Court,
M.D. Pennsylvania.

Aug. 24, 1990.

**1270**

Debra Barnhart Todd, Adler, Cohen & Grigsby, P.C., Pittsburgh, Pa., for Palco Linings, Inc.

John A. Gill, Harrisburg, Pa., for Pavex, Inc.

Jane Campbell Moriarty, Pittsburgh, Pa., Paul Cottrell, Berg, Bifferato, Tighe & Cottrell, Thomas Harper Ellis, Wilmington, Del., Paul Cottrell, Berg, Bifferato, Tighe & Cottrell, Philadelphia, Pa., for Brinjac, Kambic & Associates, Inc.

Bradley C. Bechtel, Law Bureau, Harrisburg, Pa., for City of Harrisburg.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction*

In this diversity action controlled by Pennsylvania law, defendants, Brinjac, Kambic & Associates, Inc., and Brinjac–Chester Engineers (collectively "Brinjac"),[1] have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. We will examine the motion under the well settled standard. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

This action arises out of a construction project for the City of Harrisburg, Department of Public Works (the "City"). Defendant, Pavex, Inc. ("Pavex"), was the general contractor and defendant Brinjac was the registered architect/engineer. Plaintiff, Palco Linings, Inc. ("Palco"), was Pavex's subcontractor. Plaintiff's claims against Brinjac are for negligence and negligent misrepresentation in connection with the project.

### II. *Background*

The City entered into a contract with Pavex to rehabilitate a city-owned reservoir. Pavex then sub-contracted with plaintiff which agreed to furnish and install a liner and cover at the reservoir. Brinjac was a party to a separate contract with the City to provide engineering services for the project. Complications arose during the performance of the work, allegedly causing plaintiff to incur substantial and unexpected expenses. Plaintiff submitted a claim for increased expenses to Pavex which forwarded it to the City. The City refused to pay the expenses and plaintiff brought this action, asserting, inter alia, claims against Brinjac for negligence and negligent misrepresentation in connection with the control of the water flowing into the reservoir.

In moving for summary judgment, defendant relies on the economic loss rule. This is a negative concept which provides that a plaintiff may not recover in tort for losses that are purely economic, i.e., not involving personal injury or property damage. Additionally, defendant argues that, pursuant to a release provision in the City/Pavex contract, and the incorporation clause in the Pavex/Palco contract, defendant was released of any liability for negligent actions by Pavex's acceptance of final payment from the City. The plaintiff counters that Pennsylvania law applies the eco-

---

1. Defendants contend that Brinjac, Kambic & Associates, Inc. is one of the two engineering firms making up the joint venture of Brinjac–Chester Engineers. (See brief in support at 1).

nomic loss theory only in products liability cases, and asserts that, in any event, the defendant has mischaracterized its damages as purely for economic loss. Additionally, plaintiff contends that the defendant has not been released from liability under the above contracts.

### III. *Discussion*

 The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as result of a breach of duties assumed only by agreement. Compensation in such cases requires an analysis of damages which were in the contemplation of the parties at the origination of the agreement, an analysis within the sole purview of contract law. On the other hand, the policy consideration underlying tort law is the protection of persons and property from losses resulting from *injury, Sensenbrenner v. Rust, Orling & Neale Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55 (1988), while the policy consideration underlying contract law is the protection of expectations bargained for. *Id.* Thus in light of these distinctions, to recover in tort a plaintiff must allege facts showing a breach of some duty imposed by law. In other words, to recover in negligence "there must be a showing of harm above and beyond disappointed expectations" evolving solely from a prior agreement. A buyer, contractor, or subcontractor's "desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." *See Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 177, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) *cited in Anderson Electric, Inc. v. Ledbetter Erection Corporation,* 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986).

The central issues presented in this case are: (1) whether the restrictions of the economic loss rule should be applied beyond products liability cases to construction cases; (2) whether the absence of other bases for recovery should preclude application of the economic loss rule; (3) whether the economic loss theory should be excluded from consideration in cases of negligent misrepresentation as opposed to those

of negligence; (4) whether plaintiff's losses in fact constitute purely economic losses; and (5) whether the release and incorporation provisions asserted by defendant are vague and/or overbroad, so as to preclude the release of defendant from liability.

In examining the instant case some essential points initially must be considered: the factors involved in the application of the economic loss rule to negligence claims, and the earlier, more general precedent, regarding policy considerations for tort as opposed to contractual theories of liability.

The economic loss theory has been defined and developed in the case of *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The Supreme Court opined that, based on the theory, there cannot be recovery in tort for economic loss. In *East River* the Court affirmed the district court's dismissal of a negligence count seeking recovery for repair costs and lost income. In affirming, the Court stated that any loss sustained "due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *East River,* 476 U.S. at 870, 106 S.Ct. at 2301. The Court specifically defined economic loss in a product liability context as "damage sustained resulting from a qualitative defect of the product and no person is injured or other property damaged." *Id.* Therefore, under the theory, the ultimate loss incurred by the plaintiff in *East River* was purely economic and not recoverable in tort.

The economic loss rule has been refined since 1982, when the Illinois appellate court in *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) first discussed it, and the rule is generally accepted by the majority of the courts in the United States. The *East River* case, *supra,* applied the economic loss theory to a products liability action. In doing so, it followed the rationale used by other courts that to allow tort recovery for economic losses in the absence of privity would "virtually negate the law

of warranty, as codified in the provisions of the Uniform Commercial Code." *Key International Manufacturing Inc. v. Morse/Diesel, Inc.*, 142 A.D.2d 448, 536 N.Y.S.2d 792 (1982). The majority rule has been adopted based on "the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages." *East River*, 476 U.S. at 871, 106 S.Ct. at 2302.

The plaintiff's central assertion in this case is that the economic loss limitation has been applied by Pennsylvania courts solely in tort actions involving products liability. For that reason, the plaintiff concludes that Pennsylvania does not preclude recovery for economic loss based on claims of negligence and negligent misrepresentation in the context of a construction project. The plaintiff, however, cites no Pennsylvania case law which limits the rule to products liability cases, and it provides no logical reason for its position. The contentions of the plaintiff require a review of the cases which extend the application of the economic loss rule beyond products liability actions. Such review will clearly reveal that plaintiff's argument is unfounded.

In *Key International, supra,* the court held, in light of controlling precedent, that "the owner of a construction project may not recover compensation for economic damages caused by the negligence of an architect or engineer with whom it is not in privity of contract." *Key*, 536 N.Y.S.2d at 792. *Key* extends the economic loss theory to claims arising from construction projects. The court reasoned that "there is no visible reason for any distinction between the liability of one who supplies a chattel and one who erects a structure." (*Inman v. Binghamton Housing Auth.*, 3 N.Y.2d 137, 144, 164 N.Y.S.2d 699, 143 N.E.2d 895 (1957), quoting Prosser, Torts § 85, at 517; *see also Cubito v. Kreisberg*, 69 A.D.2d 738, 745, 419 N.Y.S.2d 578 (1979), affd. 51 N.Y.2d 900, 434 N.Y.S.2d 991, 415 N.E.2d 979 (1980)).

More closely applicable to the facts at hand is the case of *Alvord & Swift v. Muller Constr. Co.*, (NYLJ, Sept. 15, 1976, at 7, col. 4, affd. 56 A.D.2d 761, 391 N.Y. S.2d 1012, on opn. of Greenfield, J. at Special Term, affd. 46 N.Y.2d 276, 413 N.Y. S.2d 309, 385 N.E.2d 1238 (1978)), which applied the economic loss rule to subcontractor-plaintiffs who bring economic claims in tort against the owner's architect, a person who is not in privity with the subcontractors. The court in *Alvord* dismissed an action brought by a subcontractor against the owner's architect for damages resulting from constructions delays because the architect owed a duty only to the owner and not the plaintiff-subcontractor. *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 135 A.D.2d 518, 521 N.Y.S.2d 747 (1987), is consistent with *Alvord* holding that an owner of a building has no cause of action in tort for purely economic losses against engineers with whom it is not in privity.

The court in *Ossining* cited *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139 (1931) which addressed the central issue of the case at hand—whether the economic loss theory may be applied to actions concerning negligent misrepresentation. In *Ultramares* the court found that "recovery will not be granted to a third person for pecuniary loss arising from the negligent representations of a professional with whom he or she has had no contractual relationship." (*See also, Plancher v. Gladstein*, 143 A.D.2d 740, 533 N.Y.S.2d 730 (1988); *Fitzpatrick, Jr., Constr. Corp. v. County of Suffolk*, 138 A.D.2d 446, 525 N.Y.S.2d 863 (1988)). The *Ultramares* court, and cases following, utilize the absence of contractual privity to preclude recovery. Similarly, the absence of privity here leads us to conclude that the economic loss theory bars recovery.

To avoid this result, plaintiff also argues that damages for negligent misrepresentation are almost always incurred in the nature of economic loss. Without citing case law to that effect, plaintiff relies on the Restatement (Second) of Torts § 552B, which partially defines damages for negligent misrepresentation:

The damages recoverable for a negligent misrepresentation are those necessary to

compensate the plaintiff for pecuniary loss to him of which the misrepresentation is the legal cause....

While this definition appears to support plaintiff's argument, it is only a partial excerpt from the full definition and is insufficient to uphold plaintiff's contentions. The Restatement continues in § 552B(2):

the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract.

The Comment following this Section further defeats the plaintiff's argument:

This Section rejects, as to negligent misrepresentation, the possibility that, in a proper case, the plaintiff may also recover damages that will give him the benefit of his contract with the defendant ... [T]here is as a general rule *no liability for merely negligent conduct that interferes with or frustrates a contract interest or an expectancy of pecuniary advantage.* [emphasis added].

The considerations of policy that have led the courts to compensate the plaintiff for the loss of his bargain in order to make the deception of a deliberate defrauder unprofitable to him, do not apply when the defendant has had honest intentions, but has merely failed to exercise reasonable care in what he says or does.

The Restatement and Comment conclude that damages for negligent misrepresentation are not designed to compensate economic losses when the plaintiff's expectations and resulting losses arise from a prior contractual agreement, such as the Palco/Pavex agreement.

■ To resist plaintiff's claim for negligent misrepresentation, defendant cites *Moorman, supra,* and *Board of Education of City of Chicago v. AC & S, Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989). These cases expressly preclude recovery for economic loss based upon a claim of negligent misrepresentation. The courts reason that if one were to recover purely economic losses for any innocent misrepresentation, then every manufacturer, architect, or engineer would be a guarantor that all of its products, designs, and specifications would continue to function satisfactorily throughout their productive life. *Moorman,* 61 Ill.Dec. at 756, 435 N.E.2d at 453. To the contrary, an architect, engineer, or manufacturer should only be responsible, in claims of negligent misrepresentation, for actual injuries to person or property caused by faulty design, etc. Only in such cases is the defendant under a legal duty to the plaintiff.

The plaintiff asserts that the defendant incorrectly relies upon the case of *New York State Electric and Gas Corporation v. Westinghouse Electric Corporation,* 387 Pa.Super. 537, 564 A.2d 919 (1989) (*"Westinghouse"*) to support its claim that recovery for economic loss is never allowed in cases of negligence and negligent misrepresentation. In *Westinghouse* the Pennsylvania Superior Court affirmed the trial court's grant of summary judgment on a negligence claim by flatly stating that economic losses are not recoverable in tort under Pennsylvania law. But it did not dispose of a negligent misrepresentation count in the same way. Rather, the court affirmed the dismissal of that claim on an entirely separate basis—that as a matter of law the complaint failed to allege the fraud or misrepresentations with specificity.

From this, the plaintiff draws the conclusion that the *Westinghouse* court *refused* to dispose of the count for negligent misrepresentation based on the economic loss theory and that the rule does not pertain to claims for negligent misrepresentation in Pennsylvania. Plaintiff's interpretation of *Westinghouse* is erroneous. The Superior Court simply had no occasion to reach the issue since no fraud claim had been stated. Plaintiff again cites no Pennsylvania case law which gives credence to its argument.

As there is no precedent in Pennsylvania which specifically addresses the above issue, we look to other jurisdictions for guidance. In very narrow and specific circumstances negligent misrepresentation may be exempt from the reach of the economic loss rule. The Illinois courts utilize the theories promulgated in *Moorman, supra, 2314 Lincoln Park West Condominium Association v. Mann, Gin, Ebel & Frazier,*

*Ltd.,* 136 Ill.2d 302, 144 Ill.Dec. 227, 229–30, 555 N.E.2d 346, 348–49 (1990) and the Restatement of Torts (Second) § 552, as their basis for determining these limited exceptions.[2]

The *Moorman* court refers to only two exceptions to the theory: (1) where one intentionally makes a false representation, and (2) where one in the business of supplying information for the guidance of others makes negligent representations. *Moorman,* 61 Ill.Dec. at 755, 435 N.E.2d at 452. The latter exception is rigidly applied and narrowly construed to except only claims which explicitly involve suppliers of information for guidance of others in business transactions, not for manufacturers, engineers, or architects who are sued for representations made in their capacity as "design professionals" (a term utilized by plaintiff, as well as the Illinois courts, to describe architects and engineers).

■ The Restatement, and the cases following it, limit tort liability to those *in the business* of selling information on which its customers rely upon in taking additional action. *See Moorman,* 61 Ill.Dec. at 755, 435 N.E.2d at 452. Such persons are attorneys, abstractors of title, surveyors, inspectors of goods, operators of ticker services, and banks dealing with non-depositors' checks. The refusal of the courts to expand this exception is illustrated in *Anderson Electric, Inc. v. Ledbetter Erection Corporation,* 115 Ill.2d 146, 104 Ill. Dec. 689, 503 N.E.2d 246 (1986).

In *Anderson* the plaintiff argued that it should recover economic losses based on the *Moorman* exception, alleging the defendant was "in the business of supplying information for the guidance of others in its business transactions and made negligent misrepresentations." *Anderson,* 104 Ill.Dec. at 692, 503 N.E.2d at 249. The plaintiff's complaint, however, alleged that the defendant was a design manufacturer of precipitators and did not claim that the defendant was in fact a supplier of information for the guidance of others in their business transactions and that it made negligent misrepresentations in that capacity. The *Anderson* court held that according to the record, it simply cannot be said that the defendant was in the business of supplying information.

Similarly, in the case at hand, plaintiff's complaint refers to Brinjac as a "design professional," and supports the fact that Brinjac was acting in a professional engineering capacity, rather than merely supplying information for plaintiff's guidance. This is revealed by the plaintiff's policy argument that application of the economic loss rule to design professionals would destroy professional malpractice law. Defendant fits the same role as the defendant in *Anderson* and cannot be characterized as a supplier of information to plaintiff in a business transaction, particularly because there was no contractual relationship between plaintiff and defendant and because of defendant's role in the project.

The business information/transaction exception has been narrowly tailored and more rigidly construed in *Hi–Grade Cleaners, Inc. v. American Permac, Inc.,* 561 F.Supp. 643 (N.D.Ill.1982). In *Hi–Grade,* the court held that tort claims based upon negligent misrepresentation are limited to those in the business of selling information which their customers might rely upon in taking *some additional action.* The court found no cases supporting an action for negligent misrepresentation where a party to a contract promised to perform but did not, which is precisely the allegation made by plaintiff in the instant case.[3]

The facts in *Hi–Grade* and the instant case are analogous. In *Hi–Grade* the plaintiff's complaint alleged that the defendant misrepresented its intention to deliver

---

**2.** We agree with defendant in its reliance upon Illinois law to support its arguments. Illinois is a jurisdiction which has exhaustively analyzed the economic loss theory in numerous contexts. Furthermore, the case law of Illinois contains fact patterns which are markedly similar and closely applicable to the facts in the case at bar.

**3.** It should be noted that the concept in *Hi–Grade* parallels the Restatement of Torts Second § 552B(2).

and install equipment, which caused the plaintiff economic losses as a result. The court held that this allegation did not state a cause of action for negligent misrepresentation. Specifically, the court held that "when a defendant is already contractually bound to the plaintiff, his assurance that he will perform in accordance with the contract is simply a reiteration of his original promise. It creates no additional liability in contract, let alone tort." *Hi–Grade*, 561 F.Supp. at 644. The *Hi–Grade* reasoning is applicable to the present case because Brinjac's representations to Palco were made in fulfilling its contract with the City, and were no more than assurances of performance of defendant's contractual commitment to the City. Plaintiff cannot be said to have relied upon defendant's representations in the taking of some additional action; rather, the plaintiff proceeded with the information given it by defendant in the manner which plaintiff was already contractually obligated to do by virtue of its agreement with Pavex. In other words, there was no reliance by plaintiff upon defendant's representations which induced some additional business transaction between plaintiff and defendant.

■ In the case at bar, the defendant-engineer, in fulfilling its contract with the City, cannot be said to be in the business of supplying information for the purpose of inducing additional action by the plaintiff. Rather, any representations made by defendant arose in the course of performing an agreement to act in the capacity as design engineer for the City's reservoir project. Defendant was contractually bound to devise plans and specifications for the City's water facilities and was bound to convey information to plaintiff concerning the scope of the work, etc. It is illogical to state that defendant was doing any more by way of its representations to the plaintiff than it was already contractually bound to the City to do. Furthermore, plaintiff was under a contractual duty to Pavex to accept defendant's representations. Thus, we can conclude that plaintiff was not induced to take any additional action which it was otherwise not already bound to take. The Palco/Pavex contract placed plaintiff under an obligation to accept the defendant's specifications and the defendant was not engaging in a separate business transaction with plaintiff.

We can readily rely upon Illinois case law, Restatement of Torts (Second), supporting jurisdictions, and applicable policy considerations to conclude that the plaintiff in this action may not recover for claims of either negligence or negligent misrepresentation against the defendant: (1) with whom it is not in privity; (2) from whom no existing legal duty is owed other than by agreement; and (3) by whose actions and representations the plaintiff has suffered no injury beyond economic losses. Plaintiff was contractually bound to receive and evaluate defendant's specifications for the reservoir and it cannot recover its economic losses from the defendant.

Plaintiff's final argument on this issue is that its losses extend beyond purely economic loss into the realm of property damage. This requires the court to examine the definition of "economic loss," as well as the allegations in the complaint which describe the type of harm suffered.

■ Plaintiff requests this court to regard its losses as being something *other than* economic, but as the defendant correctly points out, the record and pleadings to date refute this assertion. Plaintiff bases its claim on a change order it submitted for increased costs, allegedly due to delays caused by inflows of water and poor weather. Plaintiff argues that these complications somehow caused it to suffer property damage. In opposing defendant's motion for summary judgment, plaintiff, for the first time, asserts that Brinjac's negligence caused:

physical property damages to Palco related to severe flooding, inoperable drain valves and gates, unexpected inflow of water throughout outlet pipes, and insufficient drainage for excess water, all of which destroyed Palco's *work in progress* at the site on several occasions, and *led to cost over-runs* ... [emphasis added]

Plaintiff's claim throughout this litigation has been one for cost over-runs, as stated above,[4] and increased costs. (*See,* Palco's Brief in Opposition to Brinjac's Motion for Summary Judgment at p. 3 and Plaintiff's Complaint at paragraphs 35, 37, 38, 39 and 41). The terms "increased costs" and "cost over-runs" are synonymous with "lost profits." Since economic loss is defined as damages for lost profits, plaintiff cannot assert that its claim is anything other than economic.

A vast majority of cases where dismissal is based upon application of the economic loss theory have involved losses resulting from delay, just as the plaintiff asserts in the case at bar. In *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55 (1988), the plaintiff, like Palco, contended that the economic loss theory is inappropriate because the plaintiff is claiming damages for injury to property, not purely economic losses. The *Sensenbrenner* court found that the plaintiff's property damage claim had alleged nothing more than disappointed economic expectations, which most courts equate to economic loss. *See Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982).

The *Anderson* court, *supra,* defined economic losses as:

> damages for inadequate value, costs of repair and replacement of the defective product, or consequential loss of property, without any claim of personal injury or damage to *other* property. [emphasis added]. *Anderson,* 115 Ill.2d at 149, 104 Ill.Dec. 689, 503 N.E.2d 246.

The *Moorman* court, *supra,* in applying the definition to products liability further held economic loss to be:

> the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.

The above language was adopted by the U.S. Supreme Court in *East River, supra* 476 U.S. at 870, 106 S.Ct. at 2301.

We have previously shown that the economic loss rule extends to real estate and construction projects. Thus, if we apply the above definitions to the instant case, we can readily conclude that the plaintiff's claims are for purely economic loss. The design and specifications of the reservoir, if faulty, resulted in the delay of plaintiff's work, which cost the plaintiff time and money. While those are appreciable concerns, they are not recoverable under a theory of negligence or negligent misrepresentation.

Plaintiff claims cost overruns due to errors or omissions in the design specifications of defendant, which ultimately caused a delay in plaintiff's performance. The record is deplete of any reference whatsoever concerning actual property damage caused by this delay. While an overflow of water may have impeded plaintiff's work in progress, there is no specific reference to actual damage or physical injury to property. But for plaintiff's prior contract with Pavex, financial costs would not have been incurred by plaintiff; the only injury to plaintiff is that it simply did not receive the benefit of its bargain with Pavex. Thus plaintiff's losses are nothing more than disappointing economic and contractual results in the form of lost profits caused by delay.

In *Santucci Construction Company v. Baxter & Woodman, Inc.,* 151 Ill.App.3d 547, 104 Ill.Dec. 474, 502 N.E.2d 1134 (1986), the fact pattern, particularly the relationship between the parties, closely parallels the instant case. Santucci, a general contractor, and the city of Fox Lake, entered into a contract for the construction of sewer and water facilities by Santucci. The city had also entered into a separate contract with an engineer, wherein the engineer was to provide various services for the water and sewer project, including "the

---

**4.** Even in plaintiff's claim cited above, plaintiff, after listing the complications which arose, ultimately states: "all of which destroyed Palco's work in progress at the site on several occasions, and led to cost over-runs." The only real claim, therefore, is for destruction of work in progress, which is synonymous with "delay" and the resulting cost over-runs. This, clearly, is a claim for *purely* economic loss.

formulation of plans and specifications for the improvements, general supervision of the work of the contractors, and resident inspection of the work of the contractors" if requested by the city. Likewise, defendant in the case at hand was under contract to formulate plans and specifications for the improvement of the reservoir, and to supervise and inspect the work of plaintiff, according to the specifications.

Santucci, like plaintiff, brought a negligence claim against the engineering firm for: (1) the failure to avoid causing unnecessary and uncontracted additional expenses and (2) the failure to avoid causing the obstruction, hindrance and delay of Santucci and its successor in their work. Santucci requested damages for "increases in labor costs, increases in material costs, and increases in the cost of utilizing an maintaining equipment on the job site," but claimed that these were beyond purely economic loss. The *Santucci* court held that these damages were for economic losses, and that the holdings in *Moorman* and *Anderson* required dismissal of all negligence claims based on such losses.

When a construction design proves to be defective, the plaintiff stands to "experience increased costs in performing a service." *East River*, 476 U.S. at 871, 106 S.Ct. at 2302. Even assuming that defendant did negligently supervise, inspect or specify the installation of the liner to the reservoir, or waterflow therein, defendant had no duty to plaintiff to avoid causing economic loss. In *East River, supra,* the court came to the same conclusion regarding negligence in the supervision of the installation of a turbine. The court found the only injury to be damage to the turbine *operation* itself. *See, East River,* 476 U.S. at 873, 106 S.Ct. at 2304. In light of this holding, and the close factual and substantive parallel of these cases to the instant one, we conclude that plaintiff's losses were purely economic and not recoverable in tort.

The final matter for consideration is the lack of alternative theories of recovery available to plaintiff. Although some jurisdictions have held that one may recover for purely economic loss in tort if they have no other alternative theories of recovery, we will follow Illinois precedent on this issue. The court in *Anderson, supra,* held that, "a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract or warranty." *Anderson,* 104 Ill.Dec. at 691, 503 N.E.2d at 248. Thus, the fact that plaintiff in the present case may have no other alternative remedy available to recover its economic losses is irrelevant and does not serve to alter our conclusion.

Defendant has also argued that a release provision in the Pavex/City contract and an incorporation provision in the Palco/Pavex contract extinguishes plaintiff's claim against it. We have already decided that plaintiff's claim for economic losses are barred by the economic loss rule, but will discuss this issue briefly.

We find that as to the claim made by plaintiff the release provision is vague and ambiguous. We agree that it is unclear how the release provision releases Brinjac from liability to others for its *own* negligence and negligent misrepresentations. The release provision in the City/Pavex contract of June 29, 1987, provides:

> The acceptance by Contractor of final payment shall be and shall operate as a release to the Owner of all claims and all liability to the Contractor for all things done or furnished in connection with this work and for every act and neglect of the Owner and the Engineer and others relating to or arising out of this work. (Contract of June 29, 1987 at Section H.27.1)

This provision releases the City from all liability for any act and neglect of the Engineer arising out of the construction project. However, this clause does not address whether the Engineer itself is released from claims brought against *it* by others for its own negligence or negligent misrepresentations.

Under Pennsylvania law the intention of the parties governs the construction of releases and such intention can be

gleaned from the actual language of the release or from the parties' allegations as to their intentions. *Hertzog v. Jung,* 363 Pa.Super. 439, 526 A.2d 425 (1987). Absent clear language to the contrary, the release will be interpreted as a release of the City, only, upon payment to Pavex, and not to include a release of Brinjac for its own torts in connection with the construction project.

The incorporation provision in the Pavex/Palco contract does not serve to sufficiently incorporate a release by Palco to Brinjac. Even if the release provision of the City/Pavex contract were to become a part of the Pavex/Palco contract, the provision, on its face, does not impose a release by plaintiff to Brinjac for its own acts or omissions.

We will issue an appropriate order.

## ORDER AND JUDGMENT

AND NOW, this 24th day of August, 1990, upon consideration of the defendant Brinjac's motion for summary judgment, it is ORDERED that the motion is granted and summary judgment is entered in favor of defendants, Brinjac, Kambic & Associates, Inc. and Brinjac–Chester Engineers, and against plaintiff, Palco Linings, Inc.