MEMORANDUM
 

 PADOVA, District Judge.
 

 Plaintiff, Sun Company, Inc. (R & M) (“Sun”), a Pennsylvania corporation, filed a complaint against Defendants, Badger Design & Constructors (“Badger”), a Delaware corporation, and Gramatges & Associates (“Gramatges”), a Puerto Rican partnership, alleging various breach of contract, fraud, and negligence claims. Defendants move to dismiss the complaint, and, in the alternative, for a more definite statement. For the fol
 
 *367
 
 lowing reasons, I will grant in part and deny in part Defendants’ Motions.
 
 [1]
 

 I.
 
 FACTS
 

 Plaintiff operates a Lube Feedstock Optimization Project at its Yabueoa Refinery in Yabueoa, Puerto Rico (the “Plant”). On October 1,1992, Badger entered into a contract (the “Contract”) with Sun to provide engineering, procurement, and construction management services for the Plant. The Contract called for demolishing some existing structures and replacing them with new and revised structures, equipment, and piping in an effort to improve the Plant’s efficiency. On October 1,1992, Badger assigned all of its right, title, and interest in the Contract to Gramatges. Sun was party to the Assignment and expressly consented to it.
 
 See
 
 Am. Compl. Ex. B. Gramatges then subcontracted certain construction management services to a related entity, Raytheon Catalytic, Inc. (“RCI”), who is not a party to this lawsuit. In June, 1993, Sun and Badger entered into a Guaranty Agreement (“Guaranty”) whereby Sun agreed to accept the Guaranty from Badger in lieu of a performance bond or other security from Gramatges. Badger guaranteed that Gramatges would complete the project.
 
 See
 
 Am. Compl. Ex. C.
 

 Work began in September, 1992 and lasted until October, 1993. While the Plant has been in operation since October 5, 1993, Sun, refuses to pay Gramatges, Badger, and RCI. They have submitted a final demand to Sun requesting payment of the $1,600,-000.00 balance due under the Contract. On August 3, 1995, Sun filed its Complaint in this Court against both Badger and Gramatges asserting eighteen counts of breach of contract, negligence, and fraud. The Complaint avers that “subsequent to the commencement of the work, Plaintiff discovered numerous deficiencies in the engineering, management and construction undertaken by Badger and Gramatges.”
 
 [2]
 
 Am. Compl. ¶ 11. On October 27, 1995, Badger filed a Motion to Dismiss and a Motion for a More Definite Statement, and, on November 16, 1995, Plaintiff filed an Amended Complaint.
 
 [3]
 

 
 *368
 
 Count I of the Amended Complaint asserts Defendants breached the Contract by:
 

 failing/refusing to: (a) exercise due care in the performance of [the Contract], (b) provide competent engineering services, (c) provide competent construction and project management services, (d) minimize, if not eliminate design errors, (e) send two highly qualified piping engineers to the field to prepare isometric drawings of the required field piping changes, (f) discover and/or correct alleged errors in Sun’s existing drawings for the [Plant], (g) conduct a proper field survey, (h) properly supervise subcontractors on the job, (i) establish a credible schedule for the piping work, (j) inspect certain component equipment before its arrival in Puerto Rico, (k) hire competent management personnel for the project, (1) appoint an engineering manager; (m) properly man the project, (n) utilize a planner to establish a proper schedule for the project (o) advise Sun of the problems at the project in a timely fashion, (p) employ adequate quality control personnel at the project, and (q) maintain adequate communications between Badger’s San Juan and Tampa offices; (r) deliberately, intentionally, and/or negligently misleading Sun regarding the progress of the work and the problems connected with the project; (s) deliberately, intentionally and/or negligently instructing employees and/or subcontractors to remain silent regarding the problems associated with work; failing/refusing to: (t) identify and implement a critical path for the construction project, (u) provide its subcontractors with the scope of work in a timely fashion, (v) furnish drawings to its subcontractors in a timely fashion, (w) properly and adequately supervise the work of its subcontractors’ at the site, (x) timely recognize the problems as they occurred; (y) breaching the applicable standards and codes; and (z) committing other acts and/or omissions to be identified through discovery.
 

 Am. Compl. ¶ 14. The remaining Counts in the Amended Complaint recycle and reiterate these allegations with slight modification. Each Count rests, in some form or another, on these averments.
 

 II.
 
 STANDARD OF REVIEW
 

 A claim may be dismissed under Fed. R.Civ.P. 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief.
 
 ALA, Inc. v. CCAIR, Inc.,
 
 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true.
 
 Id.
 
 The district court can grant a Rule 12(b)(1) motion when the claim clearly appears to be immaterial and made solely for the basis of obtaining jurisdiction or is wholly unsubstantial and frivolous.
 
 Kehr Packages, Inc. v. Fidelcor, Inc.,
 
 926 F.2d 1406, 1408-1409 (3d Cir.1991) (citation omitted).
 

 “If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.” Fed.R.Civ.P. 12(e). “The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small — the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed.” 5A Charles A Wright & Arthur R. Miller, Federal Practice and Procedure § 1376 (1990). The motion is appropriate when the pleading is “so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].”
 
 Id.
 
 (citing
 
 Hicks v. Arthur,
 
 843 F.Supp. 949, 954 (E.D.Pa.1994)).
 

 
 *369
 
 III. DISCUSSION
 
 [4]
 

 A.
 
 FRAUD
 

 Plaintiffs Amended Complaint presents two fraud claims against Defendants: fraud in the execution of the contract and fraud in the inducement of the contract. Specifically, Plaintiff contends Defendants intentionally misrepresented that they would perform those activities described in Count I, Plaintiff was unaware of the falsity of Defendants’ representations, and Plaintiff relied on these misrepresentations to its detriment. Defendants move to dismiss the fraud counts, arguing they fail to satisfy the stringent pleading requirements articulated in Federal Rule of Civil Procedure 9(b): “in averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.” Fed.R.Civ.P. 9(b). I agree.
 

 Under Rule 9(b), a plaintiff alleging fraud must plead “(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.”
 
 Shapiro v. UJB Fin. Corp.,
 
 964 F.2d 272, 284 (3d Cir.),
 
 cert. denied,
 
 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) (citation omitted). “There is a special kind of proximate cause requirement for fraud and misrepresentation, and plaintiff must demonstrate that a specific statement
 
 caused
 
 a specific harm.”
 
 Hurt v. Philadelphia Hous. Auth.,
 
 806 F.Supp. 515, 530 n. 25 (E.D.Pa.1992) (emphasis in original). “Plaintiff may not simply point to a bad result and allege fraud. Rather, plaintiff must ... inject precision and some measure of substantiation into [the] allegations [of fraud]____who, what, when, where, and how: the first paragraph of a newspaper story would satisfy the particularity requirements.”
 
 In re Chambers Dev. Sec. Litig.,
 
 848 F.Supp. 602, 616 (W.D.Pa.1994) (citations omitted).
 

 In the instant case, Plaintiff builds its fraud claims around the same factual allegations put forth in the breach of contract and negligence claims. For example, portions of the breach of contract claim assert that Defendants failed and refused to exercise due care in the performance of the Contract, provide competent engineering services, provide competent construction and project management services, and minimize, if not eliminate, design errors.
 
 See
 
 Am. Compl. ¶ 14. The fraud in the execution claim parallels these assertions by alleging, in part, that Defendants intentionally misrepresented that they would exercise due care in the performance of the Contract, provide competent engineering and project management services, and minimize, if not eliminate, design errors.
 
 See
 
 Am. Compl. ¶ 86. Similarly, the fraud in the inducement claim maintains that Defendants misrepresented, among other things, their design expertise, engineering expertise, construction and project management expertise, and their ability to competently man the project.
 
 See
 
 Am. Compl. ¶ 127. Both fraud claims recycle the factual allegations listed in the initial breach of contract claim.
 

 In rewording the purported grounds for breach of contract, Plaintiff failed to inject precision and some measure of substantiation into the allegations. Instead, Plaintiff relies on the contentions averred in its breach of contract claims. Defendants’ alleged failure to perform is inexplicably transformed into a claim that this failure amounts to fraud — “an intentional perversion of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right.” Blacks Law Dictionary 660 (6th ed. 1990). While Plaintiff may present allegations of breach, these assertions alone are too vague to satisfy the particularity requirements of Rule 9(b). Furthermore, in falling to allege specific statements, Plaintiff has not shown a causal connection between the misrepresentations and the damages incurred.
 
 See HCB
 
 
 *370
 

 Contractors v. Rouse &
 
 Assocs.,
 
 Inc.,
 
 No. 91-5350, 1992 WL 176142, at *5 (July 13, 1992 E. D.Pa.) (stating that HCB “alleges [that] representations [which at this point are] merely a set of agreed upon contract terms ... are transformed into fraud. To accomplish the transformation, HCB simply adds to its amended complaint the catalyst of alleged known falsehood suspended in a thin elixir of information and belief____Rule 9(b) requires more”).
 

 Finally, assuming Defendants did in fact breach the Contract, the mere non-performance of an agreement is not evidence of fraud.
 
 See Oxford Indus., Inc. v. Luminco, Inc.,
 
 No. 86-6417, 1991 WL 87928, at *4 (May 22, 1991 E.D.Pa.) (stating “[a]n unperformed promise does not give rise to a presumption that the promisor intended not to perform when the promise was made, and a fraudulent intention will not be inferred merely from its nonperformance”) (citation omitted);
 
 Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Invs.,
 
 750 F. Supp. 711, 717 (W.D.Pa.1990) (stating “a broken promise not to do or refrain from doing something in the future is not fraud”),
 
 affd,
 
 951 F.2d 1399 (3d Cir.1991);
 
 Stout v. Peugeot Motors of America,
 
 662 F.Supp. 1016, 1018 (E.D.Pa.1986) (finding “it does not follow that a plaintiff should be allowed to sue in tort for damages arising out of breach of contract”);
 
 In Re Woerner,
 
 66 B.R. 964, 976 (Bankr.E.D.Pa.1986) (noting “the mere breach of contract by the debtor does not, without more, imply the existence of actual fraud”) (citation omitted);
 
 Spivack v. Berks Ridge Corp., Inc.,
 
 402 Pa.Super. 73, 586 A.2d 402, 405 (1990) (affirming lower court’s dismissal of fraud counts because “the allegations were more properly the bases for claims under breach of contract or breach of warranty theories”). Accordingly, I will dismiss,
 
 without prejudice,
 
 Count XI, Count XII (fraud in the execution of the contract), Count XV, and Count XVI (fraud in the inducement of the contract). Plaintiff is granted leave to amend within twenty (20) days hereof.
 

 B.
 
 NEGLIGENCE
 

 The Amended Complaint presents three causes of action which assert Defendants acted negligently: negligence; willful, wanton, and grossly negligent misconduct; and negligent misrepresentation. Specifically, Plaintiff alleges Defendants acted negligently in failing to provide proper engineering, construction, and project management services and improperly allowing design errors.
 
 See
 
 Am. Compl. ¶ 44. Defendants argue that the economic loss doctrine precludes Plaintiff from bringing tort claims. Pennsylvania courts have generally taken two approaches in analyzing whether a cause of action arising from a contractual relationship should be brought in contract or in tort.
 

 1.
 
 MISFEASANCE/NONFEASANCE
 

 The first approach involves a misfeasance/nonfeasance distinction. This alternative allows a tort claim for breach of contract. “The test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contractual obligation (misfeasance) rather than a mere failure to perform (nonfeasance).”
 
 Valhal Corp. v. Sullivan Assocs., Inc.,
 
 44 F.3d 195, 208 (3d Cir.1995) (citing
 
 Raab v. Keystone Ins. Co.,
 
 271 Pa.Super. 185, 412 A.2d 638, 639 (1979)). “If there has been a complete failure to perform a contract, the action lies in assumpsit, [and] if there has been an improper performance, the action lies in tort.”
 
 Id.
 

 [5]
 

 
 *371
 
 2.
 
 ECONOMIC LOSS DOCTRINE
 

 The economic loss doctrine presents a second alternative. “In general, Pennsylvania courts have been reluctant to permit tort recovery for contractual breaches.”
 
 Wood & Locker, Inc. v. Doran and Assocs.,
 
 708 F.Supp. 684, 689 (W.D.Pa.1989) (citing
 
 Glazer v. Chandler,
 
 414 Pa. 304, 200 A2d 416, 418 (1964);
 
 Brown v. Moore,
 
 247 F.2d 711, 716 n. 6 (3d Cir.),
 
 cert. denied,
 
 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957)). The economic loss doctrine “prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.”
 
 Duquesne Light Co. v. Westinghouse Elec. Corp.,
 
 66 F.3d 604, 618 (3d Cir. 1995). “The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.”
 
 Palco Linings, Inc. v. Pavex, Inc.,
 
 755 F.Supp. 1269, 1271 (M.D.Pa.1990). Compensation for losses suffered as a result of a breached agreement “requires an analysis of damages which were in the contemplation of the parties at the origination of the agreement, an analysis within the sole purview of contract law.”
 
 Auger v. Stouffer Corp.,
 
 No. 93-2529, 1993 WL 364622, at *3 (Aug. 31, 1993 E.D.Pa.). In order to recover in negligence, “there must be a showing of harm above and beyond disappointed expectations evolving solely from a prior agreement. A buyer, contractor,'or subcontractor’s desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects.”
 
 Palco Linings, Inc. v. Pavex, Inc.,
 
 755 F.Supp. at 1271.
 

 3.
 
 APPLICATION
 

 Considering the circumstances provided by the instant ease, the economic loss doctrine presents the more compelling alternative. Given the divergent approaches employed by Pennsylvania Courts, I neither speculate on how the two doctrines interrelate nor proclaim one alternative generally “superior” to other. I pursue the economic loss approach only because it is perfectly tailored to the facts presently before the Court.
 

 The progenitor of the economic loss doctrine is
 
 East River S.S. Corp. v. Transamerica Delaval,
 
 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The facts presented in this case implicate the policies underlying that decision. In
 
 East River,
 
 plaintiffs chartered super-tanker steamships which malfunctioned while at sea because of manufacturing and design defects in turbines. Plaintiffs sued the manufacturers of the turbines, and the Supreme Court ruled that commercial parties cannot bring a products liability claim in tort when the plaintiff alleges only injury to the product itself resulting in purely economic loss. The
 
 East River
 
 court noted that “when a product injures only itself, the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.”
 
 Id.
 
 at 870, 106 S.Ct. at 2302. When the injury damages the product itself, then the user looses “the value of the product ... [or] experiences increased costs in performing a service. Losses like these can be insured.”
 
 Id.
 

 In the instant case, each negligence count alleges “Sun has sustained direct damages including, but not limited to, remedial professional services in excess of $100,000 [and]____the cost to complete the project, extra expense, cost overruns, incidental direct and consequential damages, extended costs from delay to the project schedule, and such other damages as the evidence may show.”
 
 See
 
 Am. Compl. ¶¶ 46-47, 116-117, and 75-76. Like the complainant in
 
 East River,
 
 Plaintiff has only alleged “economic losses.”
 
 See Palco Linings,
 
 755 F.Supp. at 1276 (defining economic loss as damage “for inadequate value, costs of repair and replacement of defective product, consequential loss of property, without any claim of personal injury or damage to
 
 other
 
 property”) (citation omitted). Notably absent from the Amended Complaint are any allegations that Defendants inflicted harm beyond Plaintiffs disappointed expectations and dissatisfaction with Defendants’ performance of the Contract’s terms. If the Amended Complaint asserted that Defendants’ negligence resulted in the destruction of refinery equipment and the personal injuries of workers at the Plant, the economic loss doctrine would not apply. The absence of personal injury and
 
 *372
 
 property damage in the instant context, however, prevents the invocation of tort law here. At most, Plaintiff has lost its contractual economic benefits.
 

 The
 
 East River
 
 Court also found “contract law, the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements.”
 
 East River,
 
 476 U.S. at 873, 106 S.Ct. at 2303. Specifically, the warranty action insures the imposition of limited liability, “whereas a tort action could subject the manufacturer to damages for an indefinite amount. The limitation in a contract action comes from the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach.”
 
 Id.
 
 at 873-874, 106 S.Ct. at 2303. The
 
 East River
 
 Court took note of contractual covenants entered into between the parties addressing delivery, condition, inspection, etc. and concluded “the contractual responsibilities thus were clearly laid out. There is no reason to extricate the parties from their bargain.”
 
 Id.
 
 at 875, 106 S.Ct. at 2304.
 

 The Contract here contains provisions addressing the alleged breaches and limiting Defendants’ liability to preset dollar amounts.
 
 See
 
 Am. Compl. Ex. A §§ 5.1 (Professional Services), 5.2 (Field Construction Services), 5.3 (Procurement of Equipment and Materials), 6.1 (Liability and Indemnity), 6.2 (Limitation),
 
 [6]
 
 6.5 (Consequential Damages).
 
 [7]
 
 The inclusion of these provisions indicates that the alleged injury was within the contemplation of the parties. Plaintiff had the opportunity when negotiating the Contract to protect its expectations and insure against losses. This Contract represents the arrangement that has been reached between the parties. Allowing a cause of action in tort would enable Plaintiff to unilaterally modify previously agreed upon contractual terms.
 

 Plaintiff argues that the economic loss doctrine applies only to product liability cases. I disagree. The economic loss doctrine has been applied outside of products liability cases.
 
 See Interstate Sec. Corp. v. Hayes Corp.,
 
 920 F.2d 769, 773-774 (11th Cir.1991) (applying economic loss doctrine to purchaser of services);
 
 Auger,
 
 1993 WL 364622, at *3 (reasoning “[w]hile we hesitate to announce such a broad generalization, the cases construing the economic loss rule indicate that in Pennsylvania, the doctrine has application beyond the realm of products liability”);
 
 Palco Linings,
 
 755 F.Supp. at 1272 (recognizing that “Pennsylvania case law [does not limit] the rule to products liability cases” and applying the doctrine to a negligence action brought by a subcontractor against the architect/engineer);
 
 PPG Indus., Inc. v. Sundstrand Corp.,
 
 681 F.Supp. 287, 290 (W.D.Pa.1988) (applying economic loss doctrine to contract for engineering and design services because the complaint essentially “alleged the failure of PPG to receive the benefit of its bargain — traditionally the core concern of contract law”);
 
 compare Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.,
 
 71 F.3d 545, 550-551 (6th Cir.1995) (stating
 
 *373
 
 economic loss doctrine applies only in situations involving the sale of goods).
 

 Although Plaintiff points to allegations of misfeasance to support its claim in tort, the conduct complained of is specifically encompassed in the Contract and is the very essence of the bargain. When the United States Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would adopt the
 
 East River
 
 decision, it stated, “[t]he time has come to identify exactly what fundamentals underlie the controversy in each ease, and to isolate which is the governing branch of the law’s family tree____[we must] look at the tree’s trunk and main branches, rather than to concentrate on new twigs that continually sprout in all directions.”
 
 Aloe Coal Co. v. Clark Equipment Co.,
 
 816 F.2d 110, 118 (3d Cir.) (citing the Hon. Ruggero J. Aldisert,
 
 The House of the Law,
 
 19 Loy. L.A. L.Rev. 755, 764 (1986)),
 
 cert. denied,
 
 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).
 

 Here, the controversy not only involves the very essence of the bargain — Defendants’ performance — but also seeks economic damages which were directly contemplated by the Contract. Thus, this case invokes the fundamental policy considerations underlying contract, rather than tort law.
 
 See Duquesne Light,
 
 66 F.3d at 618-619 (citation omitted) (finding “[w]hen loss of the benefit of a bargain is the plaintiffs sole loss, the undesirable consequences of affording a tort remedy in addition to a contract based recovery are sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims”);
 
 Auger,
 
 1993 WL 364622, at *3 (finding tort law protects against injuries while contract law protects bargained for expectations);
 
 Palco Linings,
 
 755 F.Supp. at 1270 (stating “[t]he policy consideration underlying tort law is the protection of persons and property from losses resulting from
 
 injury ...
 
 while the policy consideration underlying contract law is the protection of expectations bargained for”) (citation omitted) (emphasis in original);
 
 Bash v. Bell Tel. Co.,
 
 411 Pa.Super. 347, 601 A.2d 825, 829 (1992) (stating “[t]o permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well settled forms of actions”) (citation omitted).
 

 Plaintiff relies on
 
 Pub. Serv. Enter. Group v. Philadelphia Elec.,
 
 722 F.Supp. 184 (D.N.J.1989) and its progeny. In
 
 Public Service,
 
 the owners of a nuclear power plant sued the operating owner after the Nuclear Regulatory Commission (“NCR”) suspended operations at the plant because the operators were sleeping on duty. Defendant moved to dismiss, alleging that misfeasance was the basis for plaintiffs’ claims and the only losses suffered were economic.
 
 Id.
 
 at 187. After examining both the economic loss doctrine and the misfeasance/nonfeasanee distinction, the court viewed the controversy as “simply a contract case;” it noted, however, that “even though this is so, we cannot, at this stage of the case, dismiss the plaintiffs tort claims. There is simply too much Pennsylvania case law which subjects a party to tort liability for improperly performing its contractual duties.”
 
 Id.
 
 at 211. Because so many Pennsylvania cases have employed the misfeasance/nonfeasanee distinction, the court did not wish to “hazard” a guess as to whieh doctrine applied at such an early stage in the litigation (on a motion to dismiss).
 

 Public Service,
 
 however, presents distinguishable facts. First, defendant breached duties imposed by law beyond the agreement. The NCR shut down the plant because the operators were sleeping on duty, i.e. breaching both the NCR’s regulations and a duty assumed by the contract between plaintiff and defendant.
 
 Public Service
 
 noted
 

 If these eases are to be explained on the basis that they involve duties that the law imposes upon certain professionals as a matter of public policy, we suspect that there might well be sound public policy reasons for imposing such duties upon a public utility running a nuclear power plant.
 

 Id. Public Service
 
 would apply in the instant ease if Plaintiff alleged that Defendants’ performance under the Contract breached duties imposed by law or public policy, i.e. the Environmental Protection Agency cited Plaintiff for violations because
 
 *374
 
 the Plant, as a result of Defendants’ malfeasance, was emitting hazardous materials. The only duties allegedly breached, however, are those found in the Contract.
 
 See Paul J. Muller Assocs., Inc. v. Transamerica Occidental Life Ins. Co.,
 
 No. 90-3128, 1991 WL 276068, at *5 (Dec. 20,1991 E.D.Pa.) (finding
 
 “Public Service
 
 demonstrates that there may be a tort action for breach of contract where the defendant owes a duty to the plaintiff or the public based on the law or public policy”).
 

 Second, unlike the instant case, plaintiffs in
 
 Public Service
 
 alleged that defendant’s improper maintenance of the plant resulted in property damage.
 
 See Public Service,
 
 722 F.Supp. at 212. As in
 
 East River,
 
 my decision rests largely on the fact that Plaintiffs Amended Complaint alleges only economic losses. Third,
 
 Public Service
 
 noted that “in some circumstances, such tort liability may be disclaimed.”
 
 Id.
 
 at 211. This Contract does, in fact, contain provisions limiting and disclaiming liability which Plaintiff negotiated. Finally,
 
 Public Service
 
 concedes that “[t]he imposition of common law tort duties can often depend upon policy considerations heavily influenced by the factual context from which a ease emerges.”
 
 Id.
 
 at 212. As discussed
 
 supra,
 
 the relevant policy considerations in the instant case warrant limiting Plaintiffs claims to the realm of contract law.
 

 4.
 
 CONCLUSION
 

 All aspects of this controversy occurred within the setting of a private commercial transaction between two- sophisticated parties. The allegations implicate no other duties than those contained in the Contract negotiated by Plaintiff. Because Plaintiff does not seek redress for an alleged breach of a duty imposed by law beyond the Contract, and the loss asserted is only the economic benefit of the bargain, the principles of contract, not tort law, should govern the facts presented by this case. Accordingly, I will dismiss Count V and Count VI (negligence), Count IX and Count X (willful, wanton, and grossly negligent misconduct), and Count XIII and XIV (negligent misrepresentation and misrepresentation).
 

 C.
 
 BREACH OF CONTRACT
 

 Defendants move for a more definite statement on Plaintiffs contract claims, asserting Plaintiff has failed to specify the legal and factual bases underlying them. Specifically, Defendants contend Plaintiff “should plead the specifics of the contract and the alleged breach.”
 
 See Khalid Bin Talal Etc. v. E.F. Hutton & Co.,
 
 720 F.Supp. 671, 685 (N.D.Ill. 1989) (denying 12(e) motion where the complaint “recites the relevant agreement, the contents thereof, and the parties thereto”). According to Defendants, the Amended Complaint should list that the Contract was made, and a copy of the Contract should be attached to the Amended Complaint. Furthermore, the Amended Complaint should state that while Plaintiff has performed its obligations under the Contract, Defendants have not lived up to their end of the bargain, “specifying the nature of the obligation which [D]efendant[s] h[ave] allegedly failed to perform and the consequent damage to [Plaintiff.” 2A J. Moore, Moore’s Federal Practice ¶ 8.17 at 8-112 (1995).
 

 A stringent standard accompanies Federal Rule of Civil Procedure Rule 12(e). “With the exception of allegations of fraud and mistake, there is no requirement in the rules that pleading be particular.” 2A J. Moore, Moore’s Federal Practice ¶ 12.18[1] at 12-161 (1995). “The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small — the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed.” 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1376 (1990). The motion is appropriate when the pleading is “so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to himself.” Id. (citing Hides
 
 v. Arthur,
 
 843 F.Supp. 949, 954 (E.D.Pa.1994)). “The basis for granting such a motion is unintelligibility, not lack of detail. As long as the defendant is able to respond, even if only with a simple denial, in good faith, without prejudice, the complaint is deemed sufficient for purposes of Rule 12(e).”
 
 Wood,
 
 708 F.Supp. at 691.
 

 
 *375
 
 Plaintiff has pled its contract claims with sufficient specificity. The allegations of breach of contract are not so vague, ambiguous, or unintelligible that Defendants cannot frame a responsive pleading. A copy of the Contract is attached to the Amended Complaint. Also, Plaintiff has listed twenty-six reasons why Defendants have breached the Contract, some of which specifically articulate how Defendants failed to satisfy their obligations under the Contract. While Plaintiff does not list the specific sections of the Contract which Defendants purportedly breached, the allegations are sufficient to enable Defendants to frame a responsive pleading. Because Defendants have not demonstrated that the Amended Complaint is as unintelligible as Rule 12(e) requires, I will deny their Motion for a More Definite Statement.
 

 An appropriate Order follows.
 

 ORDER
 

 AND NOW, this 1st day of February, 1996, upon consideration of Defendant, Badger Design & Constructors’ Motion to Dismiss and For a More Definite Statement (Doc. No. 3), the responses thereto filed by Plaintiff, Sun Company, Inc. (R & M) (Doc. Nos. 6 and 9), Defendant, Badger Design & Constructor’s Reply and Renewal of the Motion With Respect to the Amended Complaint (Doc. No. 7), Joinder By Defendant Gramatges & Associates in the Motion to Dismiss and For a More Definite Statement (Doe. No. 8), and Plaintiffs response thereto (Doc. No. 10), IT IS HEREBY ORDERED THAT:
 

 1. Defendants’ Motion for a More Definite Statement with respect to Count I, Count II, Count III, Count IV, Count VII, and Count VIII is DENIED.
 

 2. Defendants’ Motion to Dismiss Count V, Count VI Count IX, Count X, Count XI, Count XII, Count XIII, Count XIV, Count XV, and Count XVI is GRANTED.
 

 3. Count V, Count VI, Count IX, Count X, and Count XIII, Count XTV ARE DISMISSED WITH PREJUDICE.
 

 4. Count XI, Count XII, Count XV, and Count XVI (fraud) are DISMISSED WITHOUT PREJUDICE with leave to amend in accordance with the accompanying Memorandum within twenty (20) days hereof.
 

 5. Defendants shall answer Plaintiffs Second Amended Complaint within twenty (20) days hereof.
 

 [1]
 

 . Badger filed its Motion on its own behalf and addresses only those Counts which specifically name Badger. Gramatges filed a motion entitled "Joinder of Defendant Gramatges & Associates in the Motion of Defendant Badger Design
 
 &
 
 Construction, Inc. to Dismiss and for a More Definite Statement." This motion seeks the same relief but relates to the corresponding Counts asserted against Gramatges. Any conclusion reached as to the claims asserted against Badger applies to the same claims against Gramatges.
 

 [2]
 

 . Specifically, the Complaint asserts the following Counts against both Badger and Gramatges respectively: breach of contract (Count I and Count II); breach of warranties (Count III and Count IV); negligence (Count V and Count VI); breach of implied warranties (Count VII and Count VIII); willful and wanton misconduct (Count IX and Count X); active interference with performance of contract (Count XI and Count XII); fraud in the execution of contract (Count XIII and XIV); misrepresentation (Count XV and Count XVI); and fraud in the inducement of contract (Count XVII and Count XVIII).
 

 [3]
 

 . Sun's Amended Complaint omits the claims for active interference with contractual relations and renames some of the other Counts. Specifically, the Amended Complaint presents the following claims against Badger and Gramatges respectively: breach of contract (Count I and Count II); breach of warranties (Count III and Count IV); negligence (Count V and Count VI); breach of implied warranties (Count VII and Count VIII); willful, wanton, and grossly negligent misconduct (Count IX and Count X); fraud in the execution of the contract (Count XI and Count XII); negligent misrepresentation (Badger) and misrepresentation (Gramatges) (Count XIII and Count XIV); and fraud in the inducement of contract (Count XV and Count XVI).
 

 Sun's Amended Complaint does not suffer from any procedural deficiencies. Federal Rule of Civil Procedure 15 permits a party to amend its pleading “once as a matter of course at any time before a responsive pleading is served.” Fed.R.Civ.P. 15(a). Because a motion to dismiss is not a responsive pleading, Plaintiff’s Amended Complaint is properly before the Court.
 
 Schnabel v. Bldg. & Constr. Trades Council of Philadelphia,
 
 563 F.Supp. 1030, 1035 (E.D.Pa.1983) (finding it “universally held that a motion to dismiss does not constitute a responsive pleading which terminates a plaintiff's right to amend as a matter of course”) (citations omitted).
 

 With the exception of the arguments addressing the two claims Sun dropped, however, the contentions presented in Defendants' initial Motion to Dismiss are germane to the Amended Complaint because it failed to cure a majority of the deficiencies initially alleged. Furthermore, Defendants filed a renewed motion to dismiss reiterating their previous averments.
 
 See
 
 6 Charles A. Wright, Arthur R. Miller, and Mary
 

 
 *368
 
 Kay Kane, Federal Practice and Procedure § 1476 (Supp.1995) (stating that defendants are not "required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may
 
 *369
 
 consider the motion as being addressed to the amended pleading”).
 

 [4]
 

 . Because § 10.09 of the Contract states “this contract shall be governed by and interpreted in accordance with the laws of the Commonwealth of Pennsylvania,” I will apply Pennsylvania law.
 
 See
 
 Am. Compl. Ex. A. § 10.09.
 

 [5]
 

 . There are also cases which have discussed a third approach in addition to the malfeasance/nonfeasance distinction and the economic loss doctrine. These cases allow a tort claim "when the wrong ascribed to the defendant is the gist of the action, the contract being collateral.”
 
 Grode
 
 v.
 
 Mutual Fire Ins. Co.,
 
 154 Pa.Cmwlth. 366, 623 A.2d 933, 935 (1993) (citation omitted).
 
 See Valhal,
 
 44 F.3d at 208 (stating that "if the harm suffered by the plaintiff would traditionally be characterized as a tort, then the action sounds in tort and not in contract");
 
 Wood & Locker,
 
 708 F.Supp. at 689 (maintaining a tort claim only when the wrong ascribed to defendant is the gist of the action and the contract is collateral). However, these cases, “in essence, have the same underlying rationale as the
 
 Raab
 
 cases, both requiring at bottom an analysis of how much the claims in the pleadings relate to the contracts involved____[thus,] the necessary analysis can be performed under
 
 Raab. ’ ’ Id.
 

 [6]
 

 . Section 6.2 provides, in part:
 

 Contractor's overall liability for all of its obligations, warranties, guarantees and indemnifications set forth in this Contract or howsoever arising out of the performance of the Work shall not in the aggregate exceed $400,000; except that there shall be no limit to Contractor’s liability for 1) personal injury, 2) third party property damage (other than that caused by pollution/environmental impairment of any type which is limited to aforesaid $400,000), 3) patent infringement, or 4) remedial professional services; and an aggregate limit of $5,000,-000 for damages to Owner’s existing property (other than that caused by pollution/environmental impairment of any type which is limited to aforesaid $400,000. Such limitation of liability shall be valid and enforceable whether the claim is based in contract, breach of warranty, tort, including negligence and strict liability or otherwise.
 

 See
 
 Am. Compl. Ex. A. § 6.2.
 

 [7]
 

 . Section 6.5 states, in part:
 

 In no event shall Contractor, its subcontractors and/or their employees and agents be liable, whether in contract or tort (including negligence and strict liability) for any special, indirect, or consequential damages whatsoever.... Contractor and/or its employees and agents shall have no liability to Owner except as expressly provided in this Contract, whether in contract or tort, including negligence and strict liability.
 

 Am. Compl. Ex. A § 6.5.