**CONSTAR, INC., Plaintiff,**

v.

**NATIONAL DISTRIBUTION CENTERS, INC., Defendant.**

**No. Civ.A. 99–5556.**

United States District Court, E.D. Pennsylvania.

June 23, 2000.

Robert W. Hayes, Cozen & O'Connor, Philadelphia, PA, for plaintiff.

Robert Joseph La Rocca, Ryan, Brown, McDonell, Berger, Gibbons & La Rocca, Philadelphia, PA, for defendant.

## *MEMORANDUM*

ROBERT F. KELLY, District Judge.

This action arises out of an agreement pursuant to which Plaintiff Constar, Inc. ("Constar") rented 100,000 square feet of space in the warehouse of Defendant National Distributions Center, Inc. ("NDC") for storage of pallets of empty bottles which Constar manufactured for sale to various beverage producers. Constar's Complaint asserts claims for negligence, warehouseman's liability, bailment, and breach of contract in connection with this agreement. NDC filed a Motion to Dis-

miss, which was denied by Order dated December 23, 1999. On December 30, 1999, NDC filed an Answer with counterclaims of fraud, negligent misrepresentation, negligence, promissory estoppel and unjust enrichment. Constar then filed the present Motion to Dismiss NDC's counterclaims for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 19, 2000.[1] For the reasons that follow, the Motion is granted in part and denied in part.

## I. BACKGROUND.

In support of its counterclaims, NDC states the following facts. Constar, which operates out of Charlotte, North Carolina, manufactures plastic bottles which beverage manufacturers use to bottle their products. NDC operates warehouses throughout the United States. In February, 1999, Constar requested that NDC provide warehouse facilities and services to Constar in Charlotte, North Carolina. Constar indicated that it needed approximately 100,000 square feet in which to store its products. Constar allegedly stated that it needed this warehouse space on an emergency basis. The parties entered into an agreement, whereby Constar would pay $.038 per square foot per month with a minimum monthly charge of $38,000 for 100,000 square feet, plus $3.50 handling rate per pallet, plus certain labor rates based upon a 7 day/20 hour per week coverage.

NDC claims it built a warehouse in Charlotte, North Carolina in order to accommodate Constar, which Constar allegedly inspected and approved as acceptable to house its goods. Constar allegedly insisted that NDC begin to store its pallets of bottles on the first day of Constar's lease, despite the fact that Constar knew it normally takes four to six weeks to prepare a warehouse to receive goods. NDC claims it asked Constar to wait four to six weeks, but Constar refused.

NDC claims that Constar withheld material information from NDC regarding Constar's improper packaging of its pallets, which made the pallets easy to damage. Specifically, NDC claims that Constar failed to tell it that its shrink wrap machine was defective, that its employees were improperly shrink-wrapping the pallets, that its employees were applying improper tension on the packing straps, and that Constar's own warehouse contained many damaged pallets caused by Constar. NDC claims Constar was aware of all of these alleged facts.

Moreover, NDC claims that Constar intended to ship pallets to NDC with approximately 350 different SKU's ("stock keeping units") of different brands of labels of plastic bottles, but did not intend to pay for the extra 50,000 square feet of space needed to properly handle these different SKU's. NDC also claims that Constar knew that the number of pallets it was shipping to NDC could not be handled on a 20 hour/7 day per week basis, as provided in the contract.

NDC claims it was forced to provide the required 150,000 square feet per month of space to accommodate Constar's shipments. Constar allegedly refused to pay for the 50,000 square feet of extra space. NDC also claims it was forced to provide 24 hour warehouse service seven days per week, but that Constar refused to pay for this service. Constar allegedly requested that NDC accept damaged pallets, and refused to accept these damaged pallets when NDC attempted to return them to Constar. NDC was therefore forced to store these pallets, but Constar did not pay for the storage. NDC also claims that because Constar's shrink-wrap procedures

---

1. Per stipulations by the parties, NDC's response to this Motion was timely, although not filed until March 15, 2000. Since that time, Constar's counsel represented to this Court that the parties were attempting to negotiate a settlement. However, on June 21, 2000, Constar's counsel informed this Court that settlement negotiations had not been successful; thus, we will now consider this Motion.

were defective, NDC was forced to remove Constar's shrink-wrapping, and rewrap the pallets by hand. NDC claims it repaired other damaged pallets as well. Although Constar allegedly gave NDC instructions for repairing these damaged pallets, Constar refused to pay for any of these efforts. NDC also claims that Constar failed to correct its drivers who were not following their established schedules in picking up pallets from the warehouse. Accordingly, NDC claims that Constar wrongfully attempts to blame NDC for damage to pallets for which Constar is responsible.

## II. STANDARD OF REVIEW.

■ A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the pleading. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Johnsrud v. Carter*, 620 F.2d 29, 32 (3d Cir.1980). A court must determine whether the party making the claim would be entitled to relief under any set of facts which could be established in support of the claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "When deciding a 12(b)(6) motion to dismiss, the counterclaims must be read in a light most favorable to the counter-claimant, and all of the factual allegations must be taken as true." *Government Guarantee Fund of the Republic of Finland v. Hyatt Corp.*, 955 F.Supp. 441, 449 (D.Vi.1997) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988); *Fleming v. Lind–Waldock & Co.*, 922 F.2d 20, 23 (1st Cir.1990)). However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Id.*

## III. DISCUSSION.

### A. Negligence.

■ Constar correctly argues that NDC's negligence claim is barred by the economic loss doctrine. This doctrine prohibits recovery in tort for economic losses to which the party's entitlement "flows only from a contract." *Factory Mkt., Inc. v. Schuller Intern., Inc.*, 987 F.Supp. 387, 395 (E.D.Pa.1997) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995)). "The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Id.* (quoting *Palco Linings, Inc. v. Pavex, Inc.*, 755 F.Supp. 1269, 1271 (M.D.Pa. 1990)). Compensation for losses suffered because of a breach of an agreement requires an analysis of which damages were within the contemplation of the parties when the agreement was made. *Id.* at 396 (quoting *Auger v. Stouffer Corp.*, No. Civ.A. 93–2529, 1993 WL 364622, at *3 (E.D.Pa. Aug.31, 1993)). This sort of analysis is "within the sole purview of contract law." *Id.* Rather, "[i]n order to show negligence, 'there must be a showing of harm above and beyond disappointed expectations evolving solely from a prior agreement.'" *Id.* (quoting *Sun Co. v. Badger Design and Constructors, Inc.*, 939 F.Supp. 365, 371 (E.D.Pa.1996)). Accordingly, the economic loss doctrine permits recovery in negligence only for damage to property or injury to person. *State Farm Mut. Auto. Ins. Co. v. HHS Assocs., Inc.*, No. Civ.A. 93–5943, 1995 WL 739703, at *3 (E.D.Pa. Dec.1, 1995) (citing *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631, 634 (1990)).

■■ In the instant case, NDC alleges that it is asserting "losses it incurred because of Constar's negligence in preparing the pallets—labor, materials, and storage space NDC was forced to expend." (Def.'s Br. at 15; Counterclaims ¶¶ 75–84). Nowhere in its Answer or response to this Motion does NDC claim "damage" to any person or property. Rather, NDC admits that it seeks recovery for "losses" for unexpectedly expended services and materials. These are losses properly recovered in contract, and which therefore fit square-

ly within the bar imposed by the economic loss doctrine.[2]

## C. Promissory Estoppel and Unjust Enrichment.

■ A cause of action under promissory estoppel arises when a party relies to his detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be. *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa.Super.1997) (citing *Rinehimer v. Luzerne County Community College*, 372 Pa.Super. 480, 539 A.2d 1298, 1306 (1988), *app. denied*, 521 Pa. 606, 555 A.2d 116 (1988)). Promissory estoppel is applied to enforce a promise which is not supported by consideration, in other words, where there is no binding contract. *Carlson v. Arnot–Ogden Mem'l. Hosp.*, 918 F.2d 411, 416 (3d Cir.1990) (holding promissory estoppel is unwarranted in light of court's finding that parties formed an enforceable contract)[3]; *Rho v. Vanguard OB/GYN Assocs., P.C.*, No. Civ.A.98–167, 1999 WL 228993, at *6 (E.D.Pa. Apr.15, 1999) (when parties have formed an enforceable contract, relief under promissory estoppel claim is unwarranted); *Edelen & Boyer Co. v. Kawasaki Loaders, Inc.*, No. Civ.A. 92–1990, 1993 WL 147289, at *2 (E.D.Pa. May 5, 1993) (promissory estoppel has no application where parties have entered into agreement); *Bethlehem Steel Corp. v. Litton Indus., Inc.*, 507 Pa. 88, 488 A.2d 581, 593 (1985) (promissory estoppel applies only where there is no binding contract). NDC admits that the parties entered into an express contract, and does not claim that it is unenforceable. Indeed, NDC seeks to enforce the contract.[4] As such, this claim fails.

■ Moreover, NDC has failed to assert that Constar made the requisite promise under the theory of promissory estoppel. NDC can point to no express promise, but rather relies upon the alleged fact that Constar, by providing employees to direct NDC on the repair of damaged pallets, "promised to accept responsibility for the labor and materials NDC expended on that repair and in following Constar's directions." (Def.'s Br. at 25). At best,

---

**2.** NDC erroneously argues that because this Court denied its Motion to Dismiss, in which it argued that the economic loss doctrine barred Constar's negligence claims, "the law of the case" doctrine precludes this Court from dismissing NDC's negligence counterclaims. The law of the case doctrine is an equitable doctrine that provides that a decision on an issue of law made at one stage of the case is binding precedent to be followed in successive stages of litigation. *Deisler v. McCormack Aggregates Co.*, 54 F.3d 1074, 1087 (3d Cir.1995) (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). The law of the case doctrine is not implicated here. Constar alleged damage to property; NDC has not. NDC has supplied no authority standing for the proposition that a counterclaim, though meritless, cannot be dismissed merely because it is based upon the same theory as a sustainable claim in the complaint.

**3.** In *Gonzalez v. Electronic Control Sys., Inc.*, No. Civ.A. 93–3107, 1994 WL 135435, at *5 (E.D.Pa.1994), the court faced the question of whether a promissory estoppel claim was precluded by a contract. The court, applying West Virginia law, held that it was not, and distinguished *Carlson* on the basis that *Carlson* had involved Pennsylvania law, and also involved a situation where the basis for the promissory estoppel claim was identical to the basis for the contract claim. Accordingly, *Gonzalez* is not applicable here.

**4.** NDC erroneously relies upon one case, *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003 (Pa.Super.1997), in support of its claim that the existence of an enforceable contract does not bar a promissory estoppel claim. *Shoemaker* is inapposite. The issue in *Shoemaker* was whether a mortgagor who is obligated by a mortgage to maintain insurance on his property can establish a cause of action in promissory estoppel based upon an oral promise made by the mortgagee to obtain insurance. *Id.* at 1006–1007. Moreover, *Shoemaker* was so confined to its facts that the Superior Court noted that its research did not produce any factually similar cases. *Id.* Quite simply, *Shoemaker* does not support NDC's claim.

this is, presumably, an attempt to assert an implied promise. This argument fails. An implied promise is insufficient to support a claim for promissory estoppel. *Armstrong World Industries v. Robert Levin Carpet Co.*, No. Civ.A. 98–CV–5884, 1999 WL 387329, at *6 (E.D.Pa. May 20, 1999) ("Because 'promissory estoppel would [otherwise] be rendered meaningless,' one, to maintain a claim for promissory estoppel, must establish an express promise, and not merely an implied one") (quoting *C & K Petroleum Prods., Inc., v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988)); *Nabisco Inc., v. Ellison*, No. Civ.A. 94–1722, 1994 WL 622136, at *7 (E.D.Pa. Nov.8, 1994) (plaintiff could not maintain claims upon implied promise it inferred from defendant's silence and conduct). *See also Schleig v. Communications Satellite Corp.*, 698 F.Supp. 1241, 1249 (M.D.Pa. 1988) (reliance based solely upon subjective expectations and not upon any clear promise by defendants was unjustified). This claim is therefore dismissed.

 NDC's claim for unjust enrichment is also defeated by the existence of the contract between the parties. "Under Pennsylvania law, 'the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship is founded on a written agreement or express contract.'" *Armstrong*, 1999 WL 387329, at *6 (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987)). "[W]here an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract 'fixes the value of the services involved,' there can be no recovery under a quantum meruit theory." *Id.* (citations omitted); *see also Emtec Inc., v. Condor Tech. Solutions, Inc.*, No. Civ.A. 97–6652, 1998 WL 834097, at *2–3 (E.D.Pa. Nov.30, 1998) (plaintiff denied leave to amend complaint to include unjust enrichment claim because parties' relationship was based on express written contract); *Boyer Co.*, 1993 WL 147289, at *2 ("Unjust enrichment is inapplicable when the relationship is controlled by a written agreement or express contract.")[5] Accordingly, this claim is also dismissed.

## C. Remaining Claims.

Viewing all of NDC's allegations as true, we find that NDC has adequately pled its claims for breach of contract, fraud, intentional and negligent misrepresentation. Therefore, Constar's Motion is denied as to these claims.

An appropriate Order follows.

### ORDER

AND NOW, this 23rd day of June, 2000, upon consideration of Plaintiff's Motion to Dismiss Defendant's Counterclaims, and Defendant's Response thereto, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part as follows:

(1) Defendant's counterclaim for promissory estoppel is DISMISSED;

(2) Defendant's counterclaim for unjust enrichment is DISMISSED; and

(3) Defendant's other counterclaims remain.

---

5. Confusingly, NDC repeatedly insists that its claims for promissory estoppel and unjust enrichment are "complementary" to its contract claims, not mutually exclusive, and that some of its claims sound in one theory, while others sound in another. However, all of NDC's quasi-contractual claims deal precisely with its storage of Constar's pallets, which is the gravamen of the contract claims.

NDC ignores the plethora of case law in opposition to its argument, but instead tries to coax support for its position from *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 259 A.2d 443 (1969). The *Schott* plaintiff attempted to bring a contract claim as well as a claim for unjust enrichment. The contract claim was dismissed because no contract existed between the parties. The unjust enrichment claim was allowed. *Schott* simply does not stand for the proposition an existing contract does not preclude a claim for unjust enrichment.