# First Republic Bank v. Brand

C.P. of Philadelphia County, August Term 2000, no. 147.

*Suzanne I. Schiller,* for plaintiff.
*Jamie Perrapato,* for defendant.

HERRON, *J.,* December 19, 2000—Defendants Steven D. Brand,[1] James M. Dougherty, Arthur L. Powell, Richard S. Powell, Jon R. Powell, Carol P. Heller, Nancy E. Powell, Harold G. Schaeffer, James R. Schaeffer, Anthony L. Schaeffer and Robert D. Schaeffer (collectively, shareholders) have filed preliminary objections to the complaint of plaintiff First Republic Bank. For the reasons set forth in this opinion, the court is issuing a contemporaneous order sustaining the objections in part and overruling the objections in part.

## BACKGROUND

On January 7, 1998, First Republic and the shareholders agreed to the terms of a letter of intent. Under the letter of intent, the shareholders were to sell First Republic and Phoenix Mortgage Company an 80 percent interest in Fidelity Bond and Mortgage Co. The transaction was structured such that First Republic and Phoenix formed FBMC Acquisition Corp., with First Republic contributing cash in exchange for 51 percent of the common stock of FBMC and Phoenix purchasing the

---

1. Steven D. Brand is alleged to have been the representative of the shareholders.

remaining 49 percent. FBMC, in turn, purchased all of the Fidelity common stock and issued the shareholders 20 percent of the FBMC stock. The end result was that FBMC owned all of the Fidelity shares, and that First Republic, Phoenix and the shareholders owned 41 percent, 39 percent and 20 percent, respectively, of the outstanding FBMC stock. The purchase price for the Fidelity shares was to be based on the net worth of Fidelity, among other things.

The letter of intent contemplated a Fidelity net worth of $4 million on the date the transaction closed, taking into account a loan of at least $7 million to be obtained from Summit Bank. At closing, Fidelity was also to have at least $1 million, consisting of $500,000 in cash, a $500,000 line of credit from Summit Bank and the cash needed to satisfy the next Fidelity payroll. In addition, at the time the letter of intent was executed, Fidelity had a mortgage loan servicing portfolio with a gross principal balance of approximately $600 million. It is alleged that the portfolio was a substantial Fidelity asset whose value was key to calculating the purchase price.

After the letter of intent's execution but before the closing, the shareholders repeatedly assured First Republic that there was no material change in Fidelity's financial condition, according to the complaint. In response to specific inquiries, Brand allegedly assured First Republic that the portfolio's value was unchanged, as any mortgages removed from the portfolio had been replaced by new mortgages. This led First Republic to believe that the value of the portfolio was at least $600 million. The shareholders also are alleged to have made representations as to the net worth of Fidelity. The complaint asserts that all of these guarantees were false.

The parties entered into a "definitive agreement" at closing on May 1, 1998. The definitive agreement incorporated a series of representations and warranties, including a representation that there had been no material change in Fidelity's business, assets, liabilities or condition since August 31, 1997. In accordance with the definitive agreement's terms, the shareholders transferred the Fidelity shares to FBMC.

At closing and without the knowledge of First Republic, the complaint alleges that the shareholders removed cash from Fidelity in excess of what was permitted, leaving cash levels below those guaranteed in the letter of intent. In addition, First Republic claims that certain specific Fidelity financial ratios had dropped below permitted levels and that, in the months preceding closing, the value of the portfolio had declined materially. Furthermore, the line of credit supposedly did not comply with the specifications outlined in the letter of intent. According to the complaint, the shareholders were aware of these facts but intentionally led First Republic to believe otherwise.

Several months after the closing and the completion of a post-closing audit, First Republic discovered the nature and extent of the alleged misrepresentations and omissions. The complaint alleges that the deficiencies obscured by the shareholders' violations led to Fidelity's insolvency and the loss of First Republic's investment.

The complaint asserts two counts of breach of contract, as well as claims for fraudulent misrepresentation, negligent misrepresentation and punitive damages. In response, the objections assert lack of capacity to sue,[2]

2. The title of this objection asserts that First Republic lacks the capacity to sue. However, the body of the objection focuses instead on

legal insufficiency and invalidity of a punitive damages claim.

## DISCUSSION

The objections asserting that Count V—punitive damages—is invalid and that the economic loss doctrine bars a claim for negligent misrepresentation are sustained. The remaining objections are without merit and are overruled.

### I. *Standing*[3]

Standing relates to who may make a legal challenge and "may be conferred by statute or by having an interest deserving of legal protection." *Pennsylvania National Mutual Casualty Insurance Co. v. Department of Labor and Industry, Prevailing Wage Appeals Board,* 552 Pa. 385, 391, 715 A.2d 1068, 1071 (1998). To have standing, a party must satisfy the following test:

---

the plaintiffs lack of standing. As a result, the court will address only First Republic's standing to bring its claims.

3. Under Pennsylvania Rule of Civil Procedure 1028(a)(5), a party may raise a preliminary objection based on "a lack of capacity to sue." It is unclear if Pennsylvania law distinguishes between capacity to sue and standing. Compare *Witt v. Commonwealth, Department of Banking,* 493 Pa. 77, 83 n.7, 425 A.2d 374, 377 n.7 (1981) (quoting 67A C.J.S. *Parties* §10 distinction between "capacity to sue" and "standing" but not resolving "this somewhat metaphysical question"), with *In re Estate of Alexander,* 758 A.2d 182, 189 (Pa. Super. 2000) (using the terms "capacity to sue" and "standing" interchangeably). Regardless, courts of the Commonwealth permit parties to challenge standing in their preliminary objections. See *e.g., Kee v. Pennsylvania Turnpike Commission,* 685 A.2d 1054, 1056 n.4 (Pa. Commw. 1996), *aff'd,* 548 Pa. 550, 699 A.2d 721 (1997) (noting the Commonwealth Court's history of addressing preliminary objections raising questions of standing).

"[O]ne . . . must show a direct and substantial interest and a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as 'immediate' rather than 'remote.' . . . [A] substantial interest requires 'some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. . . . Direct simply means that the person claiming to be aggrieved must show causation of the harm to his interest . . .' . The immediacy or remoteness of the injury is determined by the 'nature' of the causal connection between the action complained of and the injury to the person challenging it." *DeFazio v. Civil Service Commission,* 562 Pa. 431, 756 A.2d 1103, 1105 (2000). (citations omitted) See also, *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 86, 682 A.2d 1314, 1318 (1996) ("the proponent of the action must have a direct, substantial and immediate interest in the matter at hand").

Here, the shareholders claim that First Republic itself made no direct investment in Fidelity, as FBMC, not First Republic, purchased the Fidelity shares. As a result, they assert, there is no causal connection between the allegations and any alleged injury to First Republic.

The shareholders' argument has a number of flaws. First, while FBMC purchased the Fidelity shares, it is not a signatory to either the letter of intent or the definitive agreement. Rather, the shareholders made the representations to First Republic, and, as First Republic is a party to the letter of intent and the definitive agreement, there can be no doubt that it has standing to sue for breaches of these agreements.[4]

---

4. It is beyond question that "one party to a contract has standing to sue the other for breach." *Svarzbein v. Saidel,* no. civ. a. 97-3894, 1999 WL 729260 at *5 (E.D. Pa. Sept. 10, 1999). (citation omitted)

Similarly, the shareholders allegedly made misrepresentations to First Republic, not FBMC, to induce action by First Republic. Complaint at ¶¶17, 21, 26. Furthermore, the complaint alleges that First Republic relied on the misrepresentations when it contributed cash to FBMC and otherwise proceeded with the transactions in question. *Id.* at ¶17. Ultimately, Fidelity's financial difficulties, which the shareholders' misrepresentations supposedly concealed, led to its insolvency and the loss of the investment First Republic made in Fidelity through FBMC. *Id.* at ¶32. As such, First Republic has the direct, substantial and immediate interest required for standing, and the objections challenging First Republic's standing are overruled.

## II. *Legal Sufficiency*[5]

When a court is presented with preliminary objections based on legal insufficiency,

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . .

"Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999).

---

5. In raising the objections asserting legal insufficiency, the shareholders do not argue that the parol evidence rule bars consideration of the misrepresentations alleged in the complaint. As a result, the court must examine the alleged misrepresentations and cannot regard them as being integrated into the definitive agreement. See *LeDonne v. Kessler,* 256 Pa. Super. 280, 296 n.11, 389 A.2d 1123, 1132 n.11 (1978) (refusing to address issue of parol evidence sua sponte).

To support a claim for fraudulent misrepresentation, a complaint must allege "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance." *Bortz v. Noon,* 556 Pa. 489, 499, 729 A.2d 555, 560 (1999). Negligent misrepresentation, in turn, requires: (1) misrepresentation of a material fact; (2) circumstances where the misrepresenter ought to have known the misrepresentation's falsity; (3) intent to induce another to act; and (4) resulting injury to a party acting in justifiable reliance on the misrepresentation. *Id.,* 556 Pa. at 500, 729 A.2d at 561.

The shareholders assert that the complaint does not allege the misrepresentation of a past or present material fact and that the "gist of the action" and "economic loss" doctrines preclude First Republic from bringing an action in tort. As a result, they claim, First Republic's claims for intentional and negligent misrepresentation are legally insufficient.

### A. Misrepresentation of a Past or Present Material Fact

While the objections contend that the complaint does not "allege that the defendants ever, collectively or individually, misrepresented a past or present fact," objections at ¶14, a cursory review of the complaint reveals that this is not the case. Rather, the complaint asserts a number of misrepresentations, including several regarding the value of the portfolio. Complaint at ¶¶17, 26, 28, 30. Consequently, the shareholders' claim is without

merit, and the objections based on a failure to allege the misrepresentation of a past or present fact are overruled.

## B. Gist of the Action

Until recently, it was unclear how Pennsylvania courts should determine whether an action sounded in contract or in tort. See *Grode v. Mutual Fire, Marine and Inland Insurance Co.,* 154 Pa. Commw. 366, 369, 623 A.2d 933, 934 (1993) (noting the "somewhat confused state of Pennsylvania law on this question"). However, in 1995, the Pennsylvania Superior Court addressed this issue:

"[T]o be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral. In addition, . . . a contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly. Finally, . . . the important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Phico Insurance Co. v. Presbyterian Medical Services Corp.,* 444 Pa. Super. 221, 229, 663 A.2d 753, 756 (1995) (citing *Bash v. Bell Telephone Co.,* 411 Pa. Super. 347, 601 A.2d 825 (1992)). See also, *Snyder Heating Co. v. Pennsylvania Manufacturers Association Insurance Co.,* 715 A.2d 483, 487 (Pa. Super. 1998) ("[t]o be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral").

Recently, this court analyzed a number of cases discussing the gist of the action doctrine and drew the following conclusions:

"Courts have generally invoked the gist of the action doctrine to bar a tort claim where the defendant negligently or intentionally breached a contract.[6] Courts have generally held that the gist of the action doctrine does *not* apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant."[7] *Greater Phila. Health Servs. II Corp. v.*

---

6. Supporting this conclusion are *Quorum Health Resources Inc. v. Carbon-Schuylkill Community Hospital,* 49 F. Supp.2d 430 (E.D. Pa. 1999) (doctrine barred claim of negligent performance of contractual duties); *Sunquest Info. Sys. v. Dean Witter Reynolds Inc.,* 40 F. Supp.2d 644 (W.D. Pa. 1999) (doctrine barred claim of fraudulent inducement to form a contract); *Factory Mktg. Inc. v. Schuller Int'l Inc.,* 987 F. Supp. 387 (E.D. Pa. 1998) (doctrine barred claim of fraud based on a failure to honor guarantees contained in a contract); *Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n,* 856 F. Supp. 910 (E.D. Pa. 1994) (doctrine barred conversion claim based on false billing under a contract); *Redevelopment Auth. of Cambria County v. International Insurance Co.,* 454 Pa. Super. 374, 685 A.2d 581 (1996) (doctrine barred claim of negligent performance of contractual duties); *Phico Insurance,* 444 Pa. Super. 221, 663 A.2d 753 (same); and *Bash v. Bell Telephone Co.,* 411 Pa. Super. 347, 601 A.2d 825 (1992) (same).

7. Supporting this conclusion are *American Guarantee & Liability Insurance Co. v. Fojiani,* 90 F. Supp.2d 615 (E.D. Pa. 2000) (doctrine did not bar fraud claim where the defendant's false representations about its financial health caused the plaintiff to continue investing time and energy in its venture with the defendant); *Polymer Dynamics Inc. v. Bayer,* no. civ. a. 99-4040, 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000) (doctrine did not bar fraud claim where the defendant made false representations about its performance under a contract to induce plaintiff to continue its relationship with the defendant and to reveal confidential information to the defendant); *Northeastern Power Co. v. Backe-Durr Inc.,* no. 97-CV-4836, 1999 WL 674332 (E.D. Pa. Aug.

*Complete Care Servs. L.P.,* June 2000, no. 2387, slip op. at 3-5 (C.P. Phila. Nov. 20, 2000) (Herron, J.).[8]

The allegations in the complaint are similar to those in the line of cases declining to apply the gist of the action doctrine. After the execution of the letter of intent, the complaint asserts, the shareholders represented that the value of the portfolio was higher than it in fact was. Complaint at ¶26. This misrepresentation, among others, supposedly induced First Republic to proceed with the transaction and was designed to perpetuate the contractual relationship created by the letter of intent. *Id.* at ¶¶17, 30.[9] By inference, the shareholders' actions also convinced First Republic not to exercise the rights available to it. These claims are separate and distinct from the allegations that the shareholders breached the representations, the letter of intent and the definitive agreement. As a result, the gist of the action doctrine does not apply to the matter at hand, and the objections based thereon are overruled.[10]

---

23, 1999) (doctrine did not bar a fraud claim where the defendant made specific misrepresentations about its performance under the contract with the intent to deceive the plaintiff); *Fox's Foods Inc. v. Kmart Corp.,* 870 F. Supp. 599 (M.D. Pa. 1994) (denying summary judgment motion on fraud claim because, among other reasons, the complaint alleged that the defendant intentionally made false assurances about its performance under a contract to keep the plaintiff from asserting its contractual rights against the defendant).

8. Opinion available at http://courts.phila.gov/cptcvcomp.htm.

9. While much of the letter of intent is not binding, eight specific provisions are "intended to be legally binding on the parties hereto." Letter of intent at ¶10. As a result, the letter of intent established a contractual relationship between First Republic and the shareholders.

10. The court notes once more that the shareholders do not argue that the alleged misrepresentations should be excluded under the parol evidence rule or that they were superseded by the definitive agreement.

## C. Economic Loss Doctrine

The shareholders next claim that the economic loss doctrine bars First Republic's tort claims. In sum, Pennsylvania's economic loss doctrine precludes claims for negligent misrepresentation in the absence of physical harm or damage. However, the application of the doctrine to fraudulent misrepresentation claims is a matter not addressed by Pennsylvania courts and remains an issue of serious dispute in the federal courts covering the Commonwealth. After examining the cases that treat this issue, the court believes that the economic loss doctrine does not apply to claims for fraudulent misrepresentation and that the doctrine does not bar First Republic's claim.

Like the gist of the action doctrine, the purpose of the economic loss doctrine, as adopted in Pennsylvania, is "maintaining the separate spheres of the law of contract and tort." *New York State Electric & Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa. Super. 537, 550, 564 A.2d 919, 925 (1989).[11] The Commonwealth's version of the doctrine precludes recovery for economic losses in a negligence action where the plaintiff has suffered no physical or property damage. *Spivack v. Berks Ridge Corp. Inc.,* 402 Pa. Super. 73, 78, 586 A.2d 402,

---

11. Indeed, courts often have difficulty distinguishing between the gist of the action and economic loss doctrines. See *e.g., Constar Inc. v. National Distrib. Centers Inc.,* 101 F. Supp.2d 319, 322 (E.D. Pa. 2000) (the economic loss doctrine "prohibits recovery in tort for economic losses to which the party's entitlement flows only from a contract"); *Sunquest Info. Sys. v. Dean Witter Reynolds,* 40 F. Supp.2d 644, 659 n.13 (W.D. Pa. 1999) ("the economic loss analysis appears similar, if not identical to, the application of the 'gist of the action' doctrine").

405 (1990) ("economic losses may not be recovered in tort (negligence) absent physical injury or property damage"); *Aikens v. Baltimore & Ohio R.R. Co.,* 348 Pa. Super. 17, 22, 501 A.2d 277, 279 (1985) ("no cause of action exists for negligence that causes only economic loss").[12] This generally includes actions for negligent misrepresentation. *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 620 (3d Cir. 1995). See also, *North Am. Roofing & Sheet Metal Co. v. Building & Constr. Trades Council,* no. civ. a. 99-2050, 2000 WL 230214 at *7-8 (E.D. Pa. Feb. 29, 2000) (relying on the economic loss doctrine to dismiss a claim for negligent misrepresentation).[13] Here, First Republic does not allege that it has suffered any physical damage or harm. As a result, it cannot sustain a claim for negligent misrepresentation, and Count IV must be stricken.

12. When the economic loss doctrine was first articulated in *Seely v. White Motor Co.,* 403 P.2d 145 (Cal. 1965), it applied solely to strict liability torts. Gradually, however, it has been extended to negligence claims and, by some courts, to intentional torts as well. See Steven C. Tourek, Thomas H. Boyd & Charles J. Schoenwetter, *Bucking the "Trend": The Uniform Commercial Code, The Economic Loss Doctrine and Common Law Causes of Action for Fraud and Misrepresentation,* 84 Iowa L. Rev. 875, 885-91 (1999) (tracing the history of the economic loss doctrine).

13. Other jurisdictions have not found this to be the case. See Reeder R. Fox & Patrick J. Loftus, *Riding the Choppy Waters of East River: Economic Loss Doctrine Ten Years Later,* 64 Def. Couns. J. 260, 268-70 (1997) (discussing conflict between jurisdictions over application of the economic loss doctrine to negligent misrepresentation claims). In addition, a negligent misrepresentation claim is permitted "where one in the business of supplying information for the guidance of others makes negligent representations." *Palco Linings Inc. v. Pavex Inc.,* 755 F. Supp. 1269, 1273 (M.D. Pa. 1990) (citing *Moorman Mfg. Co. v. National Tank Co.,* 435 N.E.2d 443, 452 (Ill. 1982)).

While the economic loss doctrine applies to claims based on a defendant's negligence, it is far from clear that the doctrine applies to intentional torts. The most recent articulations of Pennsylvania's economic loss doctrine appear to have broadened its scope to include tortious behavior other than negligence. See *Ellenbogen v. PNC Bank,* 731 A.2d 175, 188-89 n.26 (Pa. Super. 1999) (the economic loss doctrine "bar[s] a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property"); *KNK Medical-Dental Specialties Ltd. v. Tamex Corp.,* no. civ. a. 99-3409, 2000 WL 1470665 at *5 (E.D. Pa. Sept. 28, 2000) (the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract"); *Werwinski v. Ford Motor Co.,* no. civ. a. 00-943, 2000 WL 1201576 at *4 (E.D. Pa. Aug. 15, 2000) (the economic loss doctrine "limit[s] tort actions when only economic loss, as opposed to personal injury damage, has occurred").[14]

14. This broad language should be compared with the narrow approach taken by both Pennsylvania and federal courts just a few years earlier. See *2-J Corp. v. Tice,* 126 F.3d 539, 541 (3d Cir. 1997) (the original economic loss doctrine "provided that no cause of action could be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property"); *Getty Refining and Mktg. Co. v. M/T FADI B,* 766 F.2d 829, 833 (3d Cir. 1985) ("where the negligence does not result in physical harm, thereby providing no basis for an independent tort, and the plaintiff suffers only pecuniary loss, he may not recover for the loss of the financial benefits of a contract or prospective trade"); *Constar Inc.,* 101 F. Supp.2d at 322 ("the economic loss doctrine permits recovery in negligence only for damage to prop-

Although no Pennsylvania court has commented on it, this small but significant shift is reflected in federal courts' confusion as to whether the doctrine applies to claims for intentional torts, including fraudulent misrepresentation claims.

Federal courts in Pennsylvania have come down on both sides of the issue. Compare *KNK Medical-Dental Specialties Ltd.,* 2000 WL 1470665 at *5 (noting "a split of authority among Pennsylvania district courts as to whether the economic loss doctrine applies to intentional fraud claims" and refusing to apply the economic loss doctrine to an intentional fraud claim), and *Sunquest Info. Sys. v. Dean Witter Reynolds,* 40 F. Supp.2d 644, 658 (W.D. Pa. 1999) (concluding that the economic loss doctrine does not apply to intentional misrepresentation claims), with *Werwinski,* 2000 WL 1201576 at *5 (noting the same split of authority but dismissing an intentional fraud claim on economic loss doctrine grounds), and *Sneberger v. BTI Amers. Inc.,* no. civ. a. 98-932, 1998 WL 826992 at *7 (E.D. Pa. Nov. 30, 1998) (the economic loss doctrine "applies to negligent misrepresentation *as well as other* types of *tort claims*"). Those cases refusing to apply the doctrine have held that the economic loss doctrine does not apply "if the representation at issue is intentionally false." *North Amer. Roofing & Sheet Metal Co.,* 2000 WL 230214 at *7 (citing *Palco Linings Inc. v. Pavex Inc.,* 755 F. Supp. 1269, 1274 (M.D. Pa. 1990)).

---

erty or injury to person"); *Margolis v. Jackson,* 375 Pa. Super. 182, 185, 543 A.2d 1238, 1240 (1988) ("[p]urely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act").

The logic supporting the decisions that decline to apply the economic loss doctrine to fraudulent misrepresentation claims is convincing and is summarized best in *Stoughton Trailers Inc. v. Henkel Corp.,* 965 F. Supp. 1227 (W.D. Wis. 1997):

"Although it makes sense to allow parties to allocate the risk of mistakes or accidents that lead to economic losses, it does not make sense to extend the doctrine to intentional acts taken by one party to subvert the purposes of a contract. Although theoretically parties could include contractual provisions discussing the allocation of responsibility when one party intentionally lies or misleads the other, it would not be conducive to amicable commercial relations to require parties to include such clauses in contracts. Expressing such a basic lack of trust in the other party would be likely to sour a deal from the start.

"A party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract. Public policy is better served by leaving the possibility of an intentional tort suit hanging over the head of a party considering outright fraud . . . ." 965 F. Supp. at 1236.[15] For these rea-

---

15. Although *Stoughton Trailers'* subsequent history has been turbulent, its principles are cited and echoed elsewhere. See *e.g., All-Tech Telecom Inc. v. Amway Corp.,* 174 F.3d 862, 867 (7th Cir. 1999) (if the economic loss doctrine is applied to intentional misrepresentation claims, "prospective parties to contracts will be able to obtain legal protection against fraud only by insisting that the other party to the contract reduce all representations to writing, and so there will be additional contractual negotiations, contracts will be longer, and, in short, transaction costs will be higher"); *Budgetel Inns Inc. v. Micros Sys. Inc.,* 34 F. Supp.2d 720, 725 (E.D. Wis. 1999) ("[w]hen a seller is

sons, the court holds that an action for fraudulent misrepresentation is not barred solely because a plaintiff has suffered only economic harm.

In the complaint, First Republic alleges that the shareholders knew that their representations regarding the portfolio were false and that they intentionally misrepresented the portfolio's value. Complaint at ¶¶27, 28. As such, First Republic's failure to allege physical damage does not bar its claim for fraudulent misrepresentation, and the objections to Count III based on the economic loss doctrine are overruled.

### III. *Punitive Damages*

Under Pennsylvania law, "[a] request for punitive damages does not constitute a cause of action in an[d] of itself." *Nix v. Temple University of the Commonwealth System of Higher Education,* 408 Pa. Super. 369, 380, 596 A.2d 1132, 1138 (1991). See also, *Holl & Assocs. v. 1515 Market St. Assocs.,* May 2000, no. 1964, slip op. at

---

lying about the subject matter of a contract, the party best suited to assess the risk of economic loss switches from being the purchaser, who cannot possibly know which of several statements may be a lie, to the seller, who clearly knows"); *Comptech Int'l. Inc. v. Milam Commerce Park Ltd.,* 735 So.2d 1219, 1225 (Fla. 2000) (recognizing "the danger in an unprincipled extension" of the economic loss doctrine); R. Joseph Barton, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims,* 41 Wm. & Mary L. Rev. 1789, 1843 (2000) (warning that "overapplication of the economic loss rule [will] drown misrepresentation claims in a sea of contract"); Tourek, Boyd & Schoenwetter, 84 Iowa L. Rev. 875 (discussing how cases applying the economic loss doctrine to intentional fraud claims "ignore the important and distinct policy objectives and concerns that are associated with claims for common-law fraud and misrepresentation").

5-6 (C.P. Phila. August 10, 2000) (Herron, J.) ("[a] request for punitive damages cannot stand as an independent cause of action").[16] Rather, such a request should be made in a clause requesting relief for a viable cause of action that permits the recovery of punitive damages. As a result, the objections to First Republic's cause of action for punitive damages are sustained, and Count V is stricken.[17]

## CONCLUSION

The objections to Counts I, II and III are overruled, while the objections challenging First Republic's claims for negligent misrepresentation and punitive damages are sustained.

## ORDER

And now, December 19, 2000, upon consideration of the preliminary objections of defendants Steven D. Brand, James M. Dougherty, Arthur L. Powell, Richard S. Powell, Jon R. Powell, Carol P. Heller, Nancy E. Powell, Harold G. Schaeffer, James R. Schaeffer, Anthony L. Schaeffer and Robert D. Schaeffer to the complaint of plaintiff First Republic Bank and the plaintiff's

---

16. Opinion available at http://courts.phila.gov/cptcvcomp.htm.

17. The request for relief following the count for fraudulent misrepresentation includes a demand for punitive damages. While Counts I and II do not include such a request, punitive damages are not permitted in a breach of contract action. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 639 (Pa. Super. 1997). Consequently, there is no need to allow First Republic to amend the complaint to insert a request for punitive damages.

response thereto, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed as follows:

(1) The preliminary objections to Count IV—negligent misrepresentation—asserting legal insufficiency based on the economic loss doctrine are sustained and Count IV is stricken;

(2) The preliminary objections to Count V—punitive damages—are sustained and Count V is stricken;

(3) The remaining preliminary objections are overruled; and

(4) The defendants are directed to file an answer to the complaint within 20 days of this order.